## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

ROOSEVELT LAMAR BRADLEY, )
    **Plaintiff,** )
                              )    **CIVIL ACTION NO.**
**v.** )
                              )    2:19-cv-662
                              )
**HOME DEPOT U.S.A., INC.,** )
    **Defendant.** )

## COMPLAINT

### I.    INTRODUCTION

**COMES NOW** Plaintiff, Roosevelt Lamar Bradley (hereinafter, "Plaintiff" or "Mr. Bradley"), files this Title III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendant, Home Depot U.S.A., Inc. (hereinafter, "Defendant" or "Home Depot") pursuant to 42 U.S.C. §12181 *et seq*. In Count One of this Complaint, Plaintiff seeks to enjoin Defendant to remove architectural barriers from the facilities. In Count Two of this Complaint, Plaintiff seeks to enjoin Defendant to maintain policies, practices, and procedures necessary to maintain the facilities free of architectural barriers both now and once the architectural barriers are removed from the facilities. In Count Three of this Complaint, Plaintiff seeks to enjoin Defendant's use of the facilities to provide full and equal enjoyment of the facilities to individuals with disabilities. Count Two of this Complaint and Count Three of this Complaint seek independent relief in addition to the removal of architectural barriers from the facilities. In Count Four of this Complaint, Plaintiff seeks to enjoin Defendant's failure to design and construct Defendant's facilities to ADA compliance.

1

## II.   JURISDICTION, PARTIES, AND ARTICLE III STANDING

**1.**     This action is for declaratory relief and injunctive relief, pursuant to 42 U.S.C. §12181 *et seq.*, Title III of the ADA and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

**2.**     Venue is proper in this Court, the United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

**3.**     Mr. Bradley's right leg was amputated a few inches above his knee. The extent of Mr. Bradley's physical impairments limits his ability to perform manual tasks, walk, stand, lift, and bend, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Mr. Bradley is disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R.

**4.**     Defendant is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Defendant owns and operates the real properties and improvements located at 2312 Eastern Boulevard, Montgomery, Alabama 36117 and 10655 Chantilly Parkway, Montgomery, Alabama 36117. Home Depot is a place of public accommodation pursuant to 42 U.S.C. §12181(7).

**5.**     All events giving rise to this lawsuit occurred in the Middle District of Alabama and Defendant is a citizen thereof.

**6.**     Mr. Bradley is a resident of Prattville, Alabama. Mr. Bradley comes to Montgomery, which is just a few minutes south on I-85, several times a week. Mr. Bradley was born and raised in Montgomery, so he is very familiar with Montgomery and travels to

2

Montgomery often. Mr. Bradley has family in Montgomery, works in Montgomery, goes to church in Montgomery, shops and eats in Montgomery, and does all the daily activities in Montgomery that come with all his associations with Montgomery. Mr. Bradley intends to continue visiting Defendant's facilities. Mr. Bradley will return not only for goods and services at Defendant's facilities, but also, to confirm compliance with the ADA by Defendant. Mr. Bradley does not know exactly when he will return to Defendant's facilities because he has not planned every trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. *See, e.g., Parr v. L&L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Restaurant and Lounge, Inc.*, No. 11-61766-cn (S.D. Fla. 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment."). Nevertheless, Mr. Bradley definitely intends to return to Defendant's facilities.

7.     Mr. Bradley has been denied full and equal enjoyment of Defendant's public accommodations on the basis of his disabilities because of the barriers described below in paragraphs twenty and twenty-one and throughout this Complaint.

8.     Mr. Bradley has Article III standing to pursue this action; specifically: (1) Mr. Bradley is disabled, pursuant to the statutory definition and the regulatory definition, (2) Defendant's facilities are places of public accommodation, pursuant to the statutory definition and the regulatory definition, (3) Mr. Bradley has suffered a concrete and particularized injury by being denied access to Defendant's public accommodations, by Defendant failing to maintain policies, practices, and procedures necessary to maintain Defendant's public accommodations free of architectural barriers, by Defendant's denial of the use of the public accommodations for Mr. Bradley's full and equal enjoyment, as described throughout this Complaint, and (4) because of

3

these injuries, there exists a genuine threat of imminent future injury, as described in paragraph eighteen (18) below.

### III.    PLAINTIFF'S CLAIMS

**ADA, TITLE III**

**9.**    Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, §36.304).

**10.**    Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36,104, Defendant's facilities are places of public accommodation in that the facilities are stores providing goods and services to the public. Therefore, the public accommodations are covered by the ADA and must comply with the ADA.

### COUNT ONE
### VIOLATION OF THE ADA, TITLE III
### 42 U.S.C. §12182(b)(2)(A)(iv)
### ARCHITECRUAL BARRIERS

**Defendant's Existing Facilities are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in this Complaint.**

**11.**    Upon information and belief based on publicly available information, Home Depot located at 2312 Eastern Boulevard, Montgomery, Alabama 36117 was originally constructed in 1997. Plaintiff is further informed and believes based on publicly available information that the public accommodation in which Defendant's facility is located underwent alterations and/or improvements after 1997.

**12.**    Upon information and belief based on publicly available information, Home Depot located at 10655 Chantilly Parkway, Montgomery, Alabama 36117 was originally constructed in

4

2005. Plaintiff is further informed and believes based on publicly available information that the public accommodation in which Defendant's facility is located underwent alterations and/or improvements after 2005.

13.    The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered existing facilities, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a) - (b). 28 C.F.R. § 36.402. "Readily accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice (hereinafter, "DOJ") standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

14.    New construction and alterations must comply with either the DOJ's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with

5

the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

**15.** For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

### Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

**16.** Defendant has discriminated, and continues to discriminate, against Mr. Bradley, and others similarly situated, by denying full and equal access to, and full and equal enjoyment of

6

goods, services, facilities, privileges, advantages, and/or accommodations at Defendant's facilities in derogation of 42 U.S.C. § 12101 *et seq*., and as prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) - (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17.    Prior to the filing of this lawsuit, Mr. Bradley was denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendant's public accommodations. Mr. Bradley's access was inhibited by each of the described architectural barriers detailed in this Complaint, which remain at the public accommodations in violation of the ADA. Because of the foregoing, Mr. Bradley has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18.    Mr. Bradley has definite plans to return to Defendant's facilities in the future, as described in paragraph six (6). Plaintiff will return to Defendant's facilities within the next few months, not only to enjoy the goods and services at the facilities, but also to see if Defendant has repaired the architectural barriers and changed the policies, practices, and procedures. Plaintiff will continue to do so even when the facilities are repaired. Mr. Bradley certainly would not want to stop going when the facilities are repaired, and the practices are modified. The barriers are not just created by construction issues; instead, many of the barriers are created by human activity, from the way Defendant's workers at the public accommodations use the architectural elements of the public accommodations. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant, Mr. Bradley will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures

7

described herein, and as a result, be discriminated against by Defendant on the basis of Mr. Bradley's disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Mr. Bradley's plan to continue visiting the subject facilities, there exists a genuine threat of imminent future injury. Mr. Bradley's stated intent to return is plausible.

## Architectural Barriers

**19.** Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the DOJ, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

**20.** Mr. Bradley has been from the entrance to the counters; the counters themselves; from the entrance to the toilet room; the toilet room itself; throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which is more specifically described below. Moreover, Defendant's facility located at 2312 Eastern Boulevard, Montgomery, Alabama 36117 violates the ADA at the counters, in the toilet room, and in particular but not limited to:

(1) Defendant provides sales and service counters for able-bodied individuals to transact business and otherwise receive services that are provided at the counters but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

8

a. The sales and service counters are not maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which has the discriminatory effect of rendering the counters, associated elements, and services offered at the counters as unusable by disabled individuals;

b. The sales and service counters are not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counters and associated elements are located adjacent to a walking surface complying with 403;

c. The sales and service counters are not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surfaces that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals, which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or alternatively, a portion of the counter surfaces that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counters and a clear floor or ground space complying with 305 positioned for a forward approach to the counters;

d. The sales and service counters are not maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining the clear counter surfaces free of obstructions or

9

any other clutter that could have the discriminatory effect of rendering the counters and associated benefits and services as unusable by the disabled;

**e.** The sales and service counters are not maintained in operable condition with the ADA Standards for Accessible Design so that accessible counters extend the same depth as the non-accessible portion of the counters;

**f.** The sales and service counters are not maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in an independently usable location at the accessible counters, which has the discriminatory effect in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(2)** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

**a.** The stall door does not have door pulls located on both sides;

**b.** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of

10

the toilet room and 24 inches on the transfer side and mounted so that the top
gripping surface measures 33-36 inches above the finish floor;

c. The side wall grab bar fails to conform to the ADA Standards for Accessible
Design in all the ways that it is required to be readily accessible to and usable
by disabled individuals, which includes but is not limited to, maintaining a side
grab bar that is 42 inches (1065 mm) long minimum, located 12 inches (305
mm) maximum from the rear wall and extending 54 inches (1370 mm)
minimum from the rear wall.

d. The trash can obstructs the maneuvering clearance when existing the toilet
room.

21.    Mr. Bradley has been from the entrance to the counters; the counters themselves;
from the entrance to the toilet room; the toilet room itself; throughout circulation paths and
accessible routes, and service areas, paths of travel, and in particular but not limited to, all of which
is more specifically described below. Moreover, Defendant's facility located at 10655 Chantilly
Parkway, Montgomery, Alabama 36117 violates the ADA at the counters, in the toilet room, and
in particular but not limited to:

(1) Defendant provides sales and service counters for able-bodied individuals to transact
business and otherwise receive services that are provided at the counters but fails to
afford non-able-bodied individuals the same opportunity to participate in, or benefit
from, a good, service, facility, privilege, advantage, or accommodation that is equal to
the experience afforded to individuals without disabilities, which includes but is not
limited to, the following failures of Defendant:

11

a. The sales and service counters are not maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which has the discriminatory effect of rendering the counters, associated elements, and services offered at the counters as unusable by disabled individuals;

b. The sales and service counters are not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counters and associated elements are located adjacent to a walking surface complying with 403;

c. The sales and service counters are not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surfaces that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals, which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or alternatively, a portion of the counter surfaces that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counters and a clear floor or ground space complying with 305 positioned for a forward approach to the counters;

d. The sales and service counters are not maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining the clear counter surfaces free of obstructions or

12

any other clutter that could have the discriminatory effect of rendering the counters and associated benefits and services as unusable by the disabled;

e. The sales and service counters are not maintained in operable condition with the ADA Standards for Accessible Design so that accessible counters extend the same depth as the non-accessible portion of the counters;

f. The sales and service counters are not maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is positioned or otherwise maintained in an independently usable location at the accessible counters, which has the discriminatory effect in practice of affording disabled individuals an unequal opportunity to independently transact business in the same manner as non-disabled individuals;

**(2)** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to, the following failures of Defendant:

a. The stall door does not have door pulls located on both sides;

b. The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of

13

the toilet room and 24 inches on the transfer side and mounted so that the top
gripping surface measures 33-36 inches above the finish floor;

    **c.** The trash can obstructs the maneuvering clearance when existing the toilet
room;

**(3)** Defendant provides a family toilet room for able-bodied individuals, but fails to afford
non-able-bodied individuals the same opportunity to participate in, or benefit from, a
good, service, facility, privilege, advantage, or accommodation that is equal to the
experience afforded to individuals without disabilities, which includes but is not limited
to, the following failures of Defendant:

    **a.** The toilet paper dispenser fails to be 7 inches (180 mm) minimum and 9 inches
(230 mm) maximum in front of the water closet measured to the centerline of
the dispenser;

    **b.** The trash can obstructs the required clear floor space around the toilet;

    **c.** The rear wall grab bar fails to conform to the ADA Standards for Accessible
Design in all the ways that it is required to be readily accessible to and usable
by disabled individuals, which includes but is not limited to, maintaining a 36
inch long grab bar installed so that it is located 12 inches on the closed side of
the toilet room and 24 inches on the transfer side and mounted so that the top
gripping surface measures 33-36 inches above the finish floor.

    **22.** To date, the barriers to access and other violations of the ADA still exist and have
not been remedied or altered in such a way as to effectuate compliance with the provisions of the
ADA.

14

**23.**     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

**24.**     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facilities to make the facilities accessible to individuals with disabilities to the extent required by the ADA, and closing the facilities until the requisite modifications are completed, and to further order Defendant to modify the policies, practices, and procedures, to provide equal use of Defendant's facility, services, and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. § 12183(b)(2)(A)(ii)**
**Policies, Practices, and Procedures Denying Equal Benefits**

**ADA, Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

**25.**     Plaintiff incorporates paragraphs 1-24 above.

**26.**     The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. §12182(a)(1).

**27.**     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§12182(b)(1)(A)(ii)- (iii); 28 C.F.R. §36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. §302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. §12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been

15

forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§36.308, 36.203).

28.    Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §12101(a)(5).

29.    To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182.

30.    By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack

16

of physical access to facilities" was only one of several "major areas of discrimination that need

to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient

to only make facilities accessible and usable; this title prohibits, as well, discrimination in the

provision of programs and activities conducted by the public accommodation.").

31.     For that reason, the ADA applies not only to barriers to physical access to places

of public accommodation, but also to any policy, practice, or procedure that operates to deprive or

diminish disabled individuals' full and equal enjoyment of the privileges and services offered by

the public accommodation to the public. 42 U.S.C. §12182. Thus, a public accommodation may

not have a policy, practice or procedure that excludes individuals with disabilities from services.

42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod.*, Ltd.,

294 F.3d 1279, (11th Cir. 2002) that:

> A reading of the plain and unambiguous statutory language at issue
> reveals that the definition of discrimination provided in Title III
> covers both tangible barriers (emphasis added), that is, physical and
> architectural barriers that would prevent a disabled person from
> entering an accommodation's facilities and accessing its goods,
> services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and
> intangible barriers (emphasis added), such as eligibility
> requirements and screening rules or discriminatory policies and
> procedures that restrict a disabled person's ability to enjoy the
> Defendant entity's goods, services and privileges.

### Defendant's Failed Practices and Lack of Policies Are Discriminatory

32.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices,
> or procedures, when such modifications are necessary to afford such
> goods,    services,    facilities,    privileges,    advantages,    or
> accommodations to individuals with disabilities, unless the entity
> can  demonstrate  that  making  such  modifications  would
> fundamentally alter the nature of such goods, services, facilities,
> privileges, advantages, or accommodations.

33.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

34.     As detailed below, Defendant has failed to make reasonable modifications in the policies, practices, and procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated, or otherwise treated Plaintiff differently than individuals who are not disabled. Pursuant to 42 U.S.C. §12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

35.     Defendant either has no policies, practices, and procedures to remove architectural barriers or else do not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

36.     Defendant's use of the facilities, and the practices at the facilities creates barriers and in so doing denies Plaintiff the full and equal enjoyment of the facilities. Those practices include:

a. Defendant makes the counters inaccessible for use by the disabled, which means Plaintiff cannot fully and equally use the counters in the same way the non-disabled do, because the non-disabled have counters they can use;

b. Defendant makes the toilet rooms inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the toilet rooms so that Plaintiff is afforded the opportunity to independently use the toilet rooms, or clean up, or move into and throughout the toilet rooms, whereas non-disabled individuals are able to independently use the toilet rooms;

c. Defendant fails to provide a place for the disabled to enjoy the goods and services like able-bodied people can;

d. Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

37.     As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendant has no policies, practices, or procedures, or else have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. §12182(b)(2)(a)(iv) and (v).

38.     As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendant's existing practices are both in effect and/or explicitly to remediate ADA, Title III architectural barriers only upon demand by the disabled.

39.     As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendant has no policies, practices, and procedures or else have failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at Defendant's facilities as individuals without disabilities,

19

42 U.S.C. §12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Defendant's facilities, as described above in detail.

**40.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

**41.** To date, Defendant's discriminating policies, practices, and procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

**42.** A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. Plaintiff hereby demands that Defendant both create and adopt corporate practices and policies that Defendant (1) will fully comply with Title III, ADA, and all implementing regulations so that architectural barriers identified above are permanently removed from Defendant's facilities consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Defendant's facilities; (3) Defendant will modify the practice of making ADA, Title III architectural barrier remediations only upon demand by the disabled.

**43.** As pled above, Home Depot owns and operates the real properties and improvements in which the public accommodations are located; therefore, pursuant to 42 U.S.C. §12182, are responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

**44.** The ADA is over twenty-five (25) years old. Defendant knows Defendant must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

**45.** By this Complaint, Plaintiff provides sufficient notice of Plaintiff's demands for an alteration in Defendant's policies, practices, and procedures.

**46.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

**47.** Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE ADA, TITLE III**
**Denial of Full and Equal Enjoyment**

**48.** Plaintiff incorporates paragraphs 1-47 above.

**49.** 42 U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

**50.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

**51.** Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory

21

effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. §12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. §12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. §12101(a)(8).

**52.** In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

**53.** The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. §12182(a)(i).

**54.** The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from

22

a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

**55.** Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§12101, *et seq.*, and the regulations promulgated thereunder.

**56.** To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. §12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**57.** For that reason, the ADA applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish

23

disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. §12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. §12182(b)(1)(A)(i).

**58.** The keystone for this analysis is Defendant must start by considering how the facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L. Ed. 2d 97 (2005); *see also*, *Baughman v. Walt Disney World Company*, 685 F.3d 1131, 1135 (9th Cir. 2012).

**59.** Plaintiff was denied full and equal access to Defendant's public accommodations. Plaintiff specifically and definitely wants to return to Defendant's public accommodations. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals, which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide accessible counters; Defendant failed to provide accessible toilet rooms for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the toilet rooms, clean up after using the toilet rooms, move throughout the toilet rooms, and prohibited from using all the other elements of the toilet rooms; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible experience that nondisabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff, and others similarly situated, differently, in that, Defendant's public accommodations make Plaintiff dependent on family or an independent third party, which is not the same experience that Defendant affords to nondisabled individuals and all the foregoing

24

failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Defendant's public accommodations.

**60.** In the Preamble to the Title III regulation, the DOJ recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, §36.203.

**61.** The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§12182(b)(1)(A)(ii)-(iii); 28 C.F.R. §36.202(b)-(c). Further, 28 C.F.R. §302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. §12182(b)(1)(B); 28 C.F.R. §36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§36.308, 36.203).

**62.** Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled individuals from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." H.R. Rep. No. 101- 485(III), at 50, 1990 U.S.C.C.A.N at 473. The ADA provides a broad mandate to

25

"eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675; 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

**63.** Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Defendant's public accommodations.

**64.** Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff, and others similarly situated, unequally.

**65.** Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facilities. 28 C.F.R. §36.211(a).

**66.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

**67.** Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

26

## COUNT FOUR
## VIOLATION OF THE ADA, TITLE III
## 42 U.S.C. §12183(a)(1)
### Failure to Design and Construct Facilities for ADA Compliance

**68.** Plaintiff incorporates paragraphs 1-67.

**69.** 42 U.S.C. §12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

**70.** Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. §12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* §12101(a)(5). In its Preamble to the Title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, §36.203.

**71.** To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new

27

construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

**72.** As the legislative history makes clear, the ADA is geared to the future with the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

**73.** To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§12183(a), 12186(b). Those Standards for Accessible Design are incorporated into the DOJ's regulations implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

**74.** The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, seating, toilet rooms, and sales/service areas.

**75.** Defendant owns and operates the real properties and improvements in which Defendant's facilities are located and is directly involved in the designing and/or construction of the public accommodations in this litigation.

**76.** To date, Defendant's discriminating actions continue.

**77.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

**78.** Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE,** premises considered, Plaintiff demands judgment against Defendant on Counts One through Four of this Complaint and requests the following injunctive relief and declaratory relief:

1. That the Court declare that the businesses operated by Defendant, as well as all Defendant's illegal actions described herein, violate the ADA, as more particularly described above;

2. That the Court enter an Order enjoining Defendant to alter the facilities to make Defendant's facilities accessible to the full extent required by Title III of the ADA, to comply with 42 U.S.C. §12182(b)(2)(A)(iv) and implementing regulations, as stated in Count One;

3. That the Court enter an Order, in accordance with Count Two, directing Defendant to modify the policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. §12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make the facilities' practices consistent with ADA, Title III in the future;

4. That the Court enter an Order directing Defendant to provide Plaintiff full and equal access both to the experience and to the use of the public accommodations, and further Order Defendant to maintain the required accessible features at the public accommodations so that Plaintiff, and others similarly situated, are offered the experience that is offered to nondisabled individuals, as stated in Count Three;

5. That the Court enter an Order directing Defendant to evaluate and neutralize the policies, practices, and procedures towards individuals with disabilities for such

reasonable time so as to allow Defendant to undertake and complete corrective procedures;

6. That the Court enjoin Defendant to remediate Defendant's public accommodations to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four;

7. That the Court award reasonable attorneys' fees, costs, including expert fees, and other expenses of suit, to Plaintiff; and

8. That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 10th day of September 2019.

Cassie E. Taylor

Cassie E. Taylor
AL Bar #8297-N67R
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: CET@ADA-Firm.com
*Attorney for Plaintiff*

L. Landis Sexton
BPR #AL-5057N71L
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: LLS@ADA-Firm.com
*Attorney for Plaintiff*

30

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the above Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 10th day of September 2019 to the following:

Home Depot U.S.A., Inc.
c/o Registered Agent
Corporation Service Company Inc
641 South Lawrence Street
Montgomery, Alabama 36104

_Cassie E. Taylor_

Cassie E. Taylor
AL Bar #8297-N67R
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: CET@ADA-Firm.com
_Attorney for Plaintiff_

31